STATE OF WEST VIRGINIA

SUPREME COURT OF APPEALS

**RICKY CONAWAY,**
**Claimant Below, Petitioner**

**vs.)** **No. 19-0372** (BOR Appeal No. 2053580)
(Claim No. 2012038428)

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Ricky Conaway, by counsel Robert L. Stultz, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Murray American Energy, Inc., by counsel Denise D. Pentino and Aimee M. Stern, filed a timely response.

The issues are compensability and medical treatment. On April 3, 2018, the claims administrator denied a request for a referral to Bill Underwood, M. D. On June 8, 2018, the claims administrator denied a request for a cervical spine MRI and a request to add three diagnoses as compensable components to the claim. On October 24, 2018, the Workers' Compensation Office of Judges ("Office of Judges") reversed the claims administrator's Order of April 3, 2018, and the referral to Dr. Underwood was authorized. The Office of Judges also modified the claims administrator's Order dated June 8, 2018, which denied a cervical spine MRI and a request to add three diagnoses components to the claim. The Office of Judges authorized the cervical spine MRI and held that the other aspects of the June 8, 2018, Order shall remain in effect. This appeal arises from the Board of Review's Order dated March 28, 2019, in which the Board reversed the October 24, 2018, Order of the Office of Judges insofar as it authorized a referral to Dr. Underwood and a cervical spine MRI. The other aspects of the Office of Judges' Order was affirmed. As a result, the claims administrator's Orders dated April 3, 2018, and June 8, 2018, were reinstated.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

1

Mr. Conaway sustained a compensable injury on May 4, 2012, when a piece of machinery he was in suddenly fell and forced his head down. When the machine slammed to the ground, a conveyor belt pressed against the back of his head and neck. He was treated by Peter Ang, M.D., on May 8, 2012, for neck pain. He reported neck pain and radicular symptoms to his left arm. He reported that his symptoms were worse at night and disrupted his sleep. Dr. Ang diagnosed neck pain due to a traumatic injury from a workplace injury, left cervical radiculopathy and left shoulder pain due to the compensable injury. Dr. Ang recommended a CT scan and MRI of the cervical spine. A Report of Occupational Injury form was completed on May 8, 2012, and the physician's section was completed by Dr. Ang.

Mr. Conaway underwent an x-ray of his cervical spine on May 10, 2012, which revealed Grade 1 spondylolisthesis of C5 on C6 and multilevel cervical degenerative changes. The soft tissue was normal. There was also neural foraminal narrowing at multiple levels, on the left at C3-C4, C5-C6, and C6-C7, and on the right at C3-C4 and C5-C6. An MRI of the cervical spine on May 10, 2012, revealed moderate degenerative changes at C6-C7 and suspected asymmetric moderate left foraminal encroachment.

Mr. Conaway returned to Dr. Ang on May 22, 2012, with similar symptoms. He again reported neck pain with radicular symptoms into his left arm. Dr. Ang noted that the MRI showed foraminal encroachment on the left; and that they discussed radicular pain. Dr. Ang diagnosed cervical radiculopathy at C6-C7 and cervical disc degenerative disc disease. By claims administrator Order dated July 6, 2012, the claim was held compensable for a shoulder sprain and a neck sprain.

Bill Underwood, M.D., a neurosurgeon, treated Mr. Conaway on July 13, 2012. Dr. Underwood noted his neck pain that radiated to his left upper extremity. The radiating symptoms included paresthesias of the first, second and third fingers of the left hand. Dr. Underwood stated that the MRI conducted on May 10, 2012, showed a disc protrusion at C6-C7 with associated other degenerative disease and disc bulging at C5-C6. Dr. Underwood recommended physical therapy and an upper extremity EMG.[1]

On July 17, 2012, Mr. Conaway was initially evaluated for physical therapy at the Fairmont Rehabilitation Center. He reported cervical pain and radiculopathy that travels down his left upper extremity to his fingers. The treatment note states that his cervical MRI revealed a herniated disc at C6-C7, bone spurs and degenerative disc disease. Mr. Conaway reported that his symptoms interrupted his sleep and was aggravated by turning his head to the left.

Chong Kim, M.D., treated Mr. Conaway for pain management on October 1, 2012. According to the treatment note, he had neck pain that radiated to the left shoulder and into the first, second, and third fingers. The radicular symptoms also included numbness. Dr. Kim wrote that Dr. Underwood indicated that he was a surgical candidate but he wished to pursue conservative treatment. Dr. Kim diagnosed neck pain, left arm pain, a cervical intervertebral disc disorder, a

---

[1] Mr. Conaway underwent an upper extremity EMG on August 3, 2012, which was negative.

component of neuropathic pain and back pain. Dr. Kim also diagnosed Mr. Conaway with lumbar intervertebral disc disorder facet loading on exam, lumbar radiculopathy and a history of lateral epicondylitis. Dr. Kim recommended cervical epidural steroid injections at C6-C7 and possibly transforaminal epidural steroid injections on the left at C5-C6.[2] If Mr. Conaway did not benefit from injections, Dr. Kim would refer him back to Dr. Underwood.

Mr. Conaway was treated by Richard Vaglienti, M.D., on April 3, 2013, for neck pain. Dr. Vaglienti's treatment note discusses a lumbar MRI from May 21, 2010, which revealed degenerative changes of the discs affecting the lower lumbar vertebral segments with the most severe changes affecting the bilateral neural foramen at the L5-S1 level. According to Dr. Vaglienti, Mr. Conaway underwent cervical epidural injections at C5-C6, which improved his left arm pain by 75%. He was also able to gain some cervical range of motion after the injections. Although, he stated that he was in constant pain. Dr. Vaglienti diagnosed neck pain, left arm pain, a cervical intervertebral disc disorder, and a component of neuropathic pain. He recommended a repeat cervical epidural injection at C6-C7. Dr Vaglienti also wrote that he would consider a left C5-C6 transforaminal epidural steroid injection in the future. If Mr. Conaway did not benefit from injections, Dr. Vaglienti would refer him back to Dr. Underwood.

Mr. Conaway saw Chad Poage, D.O, an orthopedist, on February 6, 2018, for his neck and bilateral shoulder pain. Dr. Poage noted that he had a history of issues with his cervical spine since the work injury. Although he underwent epidural injections and cervical ablation, he continued to have radiating pain, numbness and tingling in both arms and hands. Dr. Poage diagnosed cervical radiculopathy and bilateral shoulder impingement syndrome. Dr. Poage believed that Mr. Conaway needed to return to Dr. Underwood for consultation regarding surgical options. He also recommended steroid injections to the right hand and left shoulders, which were performed on that date.

On February 12, 2018, Dr. Poage referred Mr. Conaway to Dr. Underwood due to cervical stenosis. The claims administrator denied the authorization request for a referral to Dr. Underwood on April 3, 2018. The claims administrator alleged cervical stenosis is not a compensable condition in the claim.

In a letter dated April 9, 2018, Dr. Ang requested that Mr. Conaway receive a cervical MRI and a referral for treatment with Dr. Underwood. Dr. Ang stated that Mr. Conaway declined surgery in 2012, and he was able to continue working with discomfort. However, Dr. Ang reported that he is now complaining of more pain and discomfort affecting his sleep. On May 16, 2018, Dr. Ang completed a Diagnosis Update form requesting that cervical degenerative disc disease, cervical radiculopathy and cervical spondylolisthesis be added as additional compensable conditions in the claim.

---

[2] On October 12, 2012, the claims administrator denied Dr. Kim's authorization request for cervical epidural injections. Mr. Conaway protested the claims administrator's decision. On February 7, 2013, the Office of Judges reversed the claims administrator's decision and authorized the injections to treat the compensable injury to Mr. Conaway's neck and shoulder.

On June 8, 2018, the claims administrator issued an Order denying Mr. Conaway's authorization request for an MRI of the cervical spine. The Order also denied Dr. Ang's request that the claims administrator recognize cervical degenerative disc disease, cervical radiculopathy and cervical spondylolisthesis as additional compensable conditions in the claim. The claims administrator noted that the 2012 cervical MRI showed evidence of degenerative disease.

Ronald Fadel, M.D., reviewed Mr. Conaway's medical records and issued a report dated June 12, 2018. Dr. Fadel considered the authorization requests in the claim, and he concluded that Mr. Conaway's cervical degenerative disc disease was not due to the compensable injury. He wrote that the cervical MRI findings are "clearly descriptive of pre-existing, age-related degenerative spondylosis and degenerative disc disease, which pre-date the subject injury." He also did not believe that Mr. Conaway developed spondylolisthesis from the compensable injury. Dr. Fadel stated that the spondylolisthesis is an "acquired degenerative circumstance not at all uncommonly seen in patients in the sixth decade of life. Absent acute evidence of laminar fracture of facet disruption, it is untenable to consider the injury as the etiology of this abnormality." In addressing the request to add cervical radiculopathy as an additional compensable condition in the claim, Dr. Fadel stated that it would be reasonable to conclude that Mr. Conaway sustained an exacerbation of his pre-existing pathology, with symptoms suggestive but inconclusive for radiculopathy.

Mr. Conaway was deposed on June 19, 2018. He described his compensable injury and his subsequent medical treatment. According to Mr. Conaway, Dr. Underwood recommended surgery. However, he further testified that he pursued conservative treatment in the form of cervical injections and a cervical ablation, which improved his cervical symptoms for approximately a year and a half. He reported that the pain gradually returned to point where he is in constant pain at the base of his neck with numbness radiating to his hand at night. Mr. Conaway testified that he experiences hand numbness when sitting for long periods. He denied intervening injuries and tries to manage his pain with medication.

Mr. Conaway protested the claims administrator's Order dated April 3, 2018, which denied his authorization request for a consultation with Dr. Underwood. He also protested the claims administrator's Order dated June 8, 2018, which denied his authorization request for an MRI of the cervical spine.

The Office of Judges found that the evidence indicates that the compensable injury caused immediate cervical pain with radicular symptoms that persisted over the years. Although Mr. Conaway continued working with his symptoms, they increased to the point that he sought additional treatment for his neck. The claims administrator denied his request for a cervical MRI and a referral to Dr. Underwood because it believed that the problems were related to preexisting conditions. The Office of Judges found that the compensable injury is the cause of Mr. Conaway's current condition and concluded that the claims administrator committed error when it denied Mr. Conaway's authorization requests for a cervical MRI and a consultation with Dr. Underwood. The Office of Judges concluded that Mr. Conaway did not prove by a preponderance of the evidence that a cervical disc disorder, cervical radiculopathy and cervical spondylolisthesis are impairments received in the course of and as a result of employment. Accordingly, the Office of Judges reversed the April 3, 2018, Order of the claims administrator and granted authorization for a referral to Dr.

Underwood. The Office of Judges also ordered that the claims administrator's Order dated June 8, 2018, be modified and that Mr. Conaway is granted authorization for an MRI of the cervical spine. All of the other aspects of the June 8, 2018, Order were to remain in effect.

In an Order dated March 28, 2019, the Board of Review reversed, in part, the decision of the Office of Judges. The Board of Review found the conclusions regarding the authorization of a referral to Dr. Underwood and a cervical spine MRI were clearly wrong in view of the reliable, probative and substantial evidence on the whole record. The Board of Review based its decision on the fact that Dr. Fadel opined that a neurosurgical consultation with Dr. Underwood and a cervical spine MRI are not medically related to and reasonably required by the compensable conditions.

After review, we conclude that the Board of Review correctly determined that the preponderance of the evidence demonstrates that the requested treatment would be directed toward Mr. Conaway's pre-existing non-compensable cervical degenerative disease, rather than his compensable injury. Dr. Fadel noted a five-year gap in Mr. Conaway's treatment for his compensable injury demonstrates no ongoing symptoms resulting from his compensable injury during that time period, which Dr. Fadel stated indicates that his current symptoms are not the result of his compensable injury. Also, Dr. Poage specifically stated during his request for authorization of a neurosurgical consultation that it would be directed toward Mr. Conaway's cervical stenosis, which is not a compensable diagnosis in this claim. Mr. Conaway did not meet his burden of proving that the cervical MRI and surgical consultation were medically related to and reasonably required by his compensable neck sprain.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board of Review's findings, reasoning and conclusions, there is insufficient support to sustain the decision. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: February 19, 2021**

**CONCURRED IN BY:**
Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**DISSENTING:**
Justice William R. Wooton

5